IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:13-cr-101-WSD-GGB |
| DEMARCO DOXIE, | |
| Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Demarco Doxie's ("Doxie" or "Defendant") Objections to the Magistrate Judge's Report and Recommendation ("Objections") [67] regarding Defendant's Perfected Motion to Suppress Evidence (the "Suppression Motion") [41]. Magistrate Judge Brill's Final Report and Recommendation ("R&R") [63] was entered on June 18, 2014.

**I.   BACKGROUND**

Doxie was employed by Ennis Traffic Safety Solutions ("Ennis"), a manufacturer of road marking and pavement surface treatments.[1] Doxie was a manager at the company. Defendant is charged in a Second Superseding Indictment returned on March 4, 2014, with: one (1) count of mail fraud in

---

[1] The parties have not objected to the finding of facts set out in the R&R, and, finding no plain error in the findings, the Court adopts them.

1

violation of 18 U.S.C. § 1341, and twenty (20) counts of wire fraud in violation of 18 U.S.C. § 1343. Defendant is alleged to have engaged in a scheme to defraud during the period January 2007 through August 2011, while employed by Ennis (the "Second Superseding Indictment"). Count One of the Second Superseding Indictment alleges that Doxie fabricated invoices from Outlook Environmental & Safety Solutions ("Outlook") for submission to, and payment by, Ennis. Doxie was the owner and only employee of Outlook. In Counts Two through Twenty-one, Doxie is alleged to have charged various personal expenses on his company issued American Express and JP Morgan Chase credit cards and that these expenses were submitted to and paid by Ennis. The charges are alleged not to have been authorized. It also is alleged that Doxie used his company provided American Express card to pay Outlook for services that were not received by Ennis.

The charges against Doxie were brought by the Government after it was informed of the results of an internal investigation conducted by Ennis. The investigation was conducted with the assistance of Kenneth Broodo ("Broodo"), an attorney who Ennis hired to investigate the conduct in which Ennis suspected that Doxie had engaged. Grant Thornton, an accounting firm in Atlanta, also was hired to assist in the investigation including retrieving and reviewing information stored

in a laptop and iPhone that Ennis issued to Doxie for his use. Grant Thornton also was tasked with reviewing Ennis's hard drives and backup tapes for information relating to the conduct for which Doxie was being investigated by the company (the "Company Computer Information"). Doxie hired Alan Kan ("Kan"), a lawyer in Atlanta, to represent him in Ennis's investigation.

Doxie filed his Suppression Motion to exclude certain statements made during, or statements attributed to Doxie, in connection with communications between Broodo and Kan during the course of Ennis's internal investigation or which Kan provided to Broodo in response to his request for information from Doxie (the "Attorney and Doxie Statements"). Defendant argues that the Attorney and Doxie Statements are required by Rule 408 of the Federal Rules of Evidence to be excluded at trial because the communications are inadmissible settlement discussions.[2]

Doxie also seeks to suppress information[3] retrieved from Doxie's company-issued laptop and iPhone devices, and which was provided to law enforcement (the "Device Information"). Defendant contends the Device Information is required to

---

[2] The Suppression Motion was filed before the Second Superseding Indictment but the Court considers the Suppression Motion as renewed by Doxie's filing of the Objections.

[3] The Device Information apparently generally relates to the invoices issued by Outlook to Ennis for payment.

be suppressed because the Fourth Amendment required a warrant be obtained to access the Device Information and the Device Information was obtained without a warrant being issued. Doxie contends that even though Ennis and Broodo were private parties when the Device Information was obtained, they were acting as an agent of the Government, thus implicating Doxie's Fourth Amendment rights. Defendant contends that introduction of them at trial would violate Defendant's rights under the Fourth Amendment. The absence of a warrant under the circumstances here, Defendant argues, requires the Device Information be suppressed.

  The Magistrate Judge, in her R&R, determined that the statements made in communications between Broodo and Kan, and statements attributed to Doxie which were offered in response to requests made by Broodo to explain Doxie's conduct, are required to be excluded from trial by Rule 408 of the Federal Rules of Evidence because they were made during settlement negotiations. She also found that the Device Information obtained by Grant Thornton in connection with the investigation was not collected for law enforcement and thus the information was not obtained by Ennis acting as an agent of the Government. The Magistrate Judge found that the Device Information was not obtained in violation of Doxie's

constitutional rights including those under the Fourth Amendment. She recommended the motion to suppress the Device Information be denied.

Objections were not filed to the Magistrate Judge's finding and recommendation that Rule 408 of the Federal Rules of Evidence required that the Statements be excluded. Doxie filed his objections to the Magistrate Judge's finding and recommendation that the Device Information is not required to be suppressed because it was obtained by a private person who was not acting as an agent of the Government.

## II.   STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal citations omitted). With respect to those findings and recommendations

to which a party has not asserted objections, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

### III. DISCUSSION

#### A. Statements Made In and the Result of the Broodo and Kan communications

The parties do not object to the Magistrate Judge's finding and recommendation that the Attorney and Doxie Statements be suppressed and excluded from admission at trial pursuant to Rule 408 of the Federal Rules of Evidence.  Having reviewed the finding and recommendation, and finding no plain error in them, the Court concludes that the Attorney and Doxie Statements are not admissible in the trial of this case and the Suppression Motion is granted to exclude this information.

#### B. Accessing of the Device Information

Generally, the Fourth Amendment requires that the Government apply to a neutral and detached magistrate for a warrant to obtain information from a person suspected of a crime.  United States v. Martin, 297 F.3d 1308, 1316 (11th Cir. 2002) (citing Coolidge v. New Hampshire, 403 U.S. 443, 450 (1971)).  A warrant may only be issued to the Government to conduct a search upon a finding that there is probable cause that the person from whom evidence is sought committed the offense or offenses suspected.  United States v. Joseph, 709 F.3d 1082, 1099

(11th Cir. 2013) (citing United States v. Betancourt, 734 F.2d 750, 754 (11th Cir.1984)). The requirement of a warrant extends to computers assigned to an employee if the employee has an expectation of privacy in the information stored within the computer. United States v. Ziegler, 474 F.3d 1184, (9th Cir. 2007), denial of rehearing en banc, 497 F.3d 890 (9th Cir. 2007), see also, United States v. Heckenkamp, 482 F.3d 1142, (9th Cir. 2007). The requirement of a warrant does not apply to searches conducted by private persons unless they are acting as an agent of the Government. United States v. Ford, 765 F.2d 1088, 1089-90 (11th Cir. 1985). To evaluate whether a private person is acting on, for or on behalf of the Government, a Court should consider two factors: first, "whether the government knew of and acquiesced in the intrusive conduct, and, second, whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003).

    Defendant does not claim that the Government "knew of or acquiesced in" Ennis's investigation or Broodo's or Grant Thronton's participation in it. Defendant only contends: "that Ennis and their representatives' (sic) purpose was to assist law enforcement in pursuing a criminal case against Mr. Doxie." Objections at 3. Doxie claims that Ennis collected evidence about Doxie's conduct

not to settle claims against Doxie.  The information, Defendant argues, was collected for the purpose of providing it to law enforcement.  Doxie claims: "that [Broodo] and his client [Ennis] were always pursuing this as a criminal investigation, and were in essence just misleading Mr. Doxie in an effort to obtain incriminating information, which they did."  Id.  That Broodo had conducted investigations previously for clients and referred some of his findings to law enforcement, he must have intended to do so in his investigation for Ennis.  This self-serving argument is inconsistent with the facts and reason.

     The evidence persuasively supports that Ennis retained Broodo and also Grant Thornton to help investigate Doxie's conduct while he worked at Ennis.  Doxie was suspected of improperly using his company credit cards and that he directly or indirectly owned a company that was billing services to Ennis.  Trans. at 15, 64.  Broodo reiterated during his testimony at the March 6, 2014, evidentiary hearing that his goal was to "find out what happened" and that Ennis "want[ed] to more clearly understand [Doxie's] position before deciding on a course of action".  Broodo Tes., T. at 109, Ex. B.  Defendant understood that Ennis "reserve[d] the right to take legal action" and that Ennis would defer until after Ennis "more clearly unders[tood Doxie's] position before deciding on a course of action."

Id. at 109.[4]  Grant Thornton was retained by Ennis to assist in the investigation by reviewing electronic devices and data storage media.  Grant Thornton's role specifically was to retrieve information from Doxie's company-provided laptop and iPhone and from Ennis's hard drives and backup tapes.  Information was gathered by Ennis, Broodo and Grant Thornton in their effort to understand Doxie's conduct.  The matter ultimately was referred to law enforcement.  Broodo provided the following summary regarding the referral of this matter once Ennis understood Doxie's activities:

> Q:  All right.  I want to switch gears a little bit and discuss Ennis' investigation of this matter.  While you're engaging with these talks with Mr. Kan was Ennis separately doing its own internal investigation to try to determine what had happened?
>
> A (Broodo):  Sure, it was a multifaceted endeavor.  So the company was doing other things besides have me talk to Mr. Kan.
>
> Q.  And as part of that investigation, did the company review Mr. Doxie's company issued laptop and his company-issued telephone?
>
> A:  Yes, not only that, but I believe they did that, yes.

---

[4] Broodo acknowledged the possibility of discussing a civil settlement after he had "full information about what had occurred."  At some point Broodo told Kan that Ennis required Doxie to pay $60,000-$70,000 to repay the company for certain charges on Doxie's company American Express bill.  Doxie was not able to pay that amount and, according to Doxie's lawyer, Mr. Kan, "everything kind of just died at that point." T. at 51.

> Q. Did they also review e-mails and documents that were on the Ennis server for anything that was related to Mr. Doxie?
>
> A. Yes, the company, to clarify, the company itself didn't do that. It engaged a vendor to do that, a forensic computer vendor to do that review.[5]
>
> Q. That was part of the company's internal investigation?
>
> A. Yes, I think it was Grant Thornton.
>
> Q. And were all of these searches of Mr. Doxie's company computer, his work phone and the Ennis server, was that all done prior to law enforcement getting involved in this investigation at all?
>
> A. Yes, we tried to button everything up before talking to law enforcement because we wanted to know what happened and whether there was anything to talk to law enforcement about.

T. at 73-74.

Broodo summarized the reason a referral was made to law enforcement:

> A: Once the company decided that something really bad happened, they were ready to fully cooperate and turned everything over to [law enforcement], [who] basically said tell us what else you might know.
>
> Q: And as part of the information they turned over, did they turn over the information from Mr. Doxie's computer and his work phone.
>
> A. Yes.

T. at 74-75.

The evidence before the Court shows that neither Ennis, nor Broodo or Grant Thornton on Ennis's behalf, conducted the investigation for the purpose of

---

[5] The transcript indicates that Grant Thornton was the vendor who did this work.

providing information to law enforcement.  The evidence shows, compellingly, that Ennis suspected Doxie of wrongful use of his company issued credit cards and was suspicious of invoices to Ennis by a company in which Doxie had an ownership interest.  Ennis decided to investigate these suspicions, including by hiring Broodo to manage the investigation and by hiring Grant Thornton to examine information on Doxie's company issued laptop and phone, and to search for information on Ennis's computer hard drive and backup tapes for information relating to Doxie's conduct.  When Ennis knew the kind and scope of Doxie's conduct, it decided to turn over what it knew to law enforcement officials for their review.

    The evidence shows that Ennis's purpose in conducting its investigation of Doxie's conduct was to determine the scope of kind and scope of Doxie's conduct so that Ennis could determine how to respond to it.  The purpose of the investigation was not "to assist law enforcement efforts."  Steiger, 318 F.3d at 1045.  Doxie's objection to the finding that Doxie's Fourth Amendment rights were not violated and that a warrant to obtain the information was not required is overruled.  The Device Information is not required to be suppressed.

### III.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Magistrate Judge Brill's Final Report and Recommendation ("R&R") [63] is **ADOPTED.**

**IT IS FURTHER ORDERED** that Defendant's Perfected Motion to Suppress Evidence [41] is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** with respect to the Attorney and Doxie Statements.  It is **DENIED** with respect to the Device Information.

**SO ORDERED** this 5th day of August, 2014.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE