IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | 1:13-cr-101-WSD-1 |
| DEMARCO DOXIE, | |
| Defendant. | |

## OPINION AND ORDER

This matter is before the Court on the Government's Supplemental Sentencing Memorandum [102] and Defendant's Response to the Government's Supplement Sentencing Memorandum [103]. The memoranda address the issue that arose during Defendant Doxie's ("Doxie" or "Defendant") sentencing on January 14, 2015, regarding whether the mail and wire fraud counts of conviction in this case are required to be grouped with the tax counts of conviction under the United States Sentencing Guidelines.

I.   **BACKGROUND**

Doxie was convicted of sixty-two (62) counts of mail and wire fraud, resulting from his scheme to fraudulently bill his employer, Ennis-Paint. The scheme resulted in fraudulent payments to Doxie in an amount of over $1 million.

Doxie also was convicted of four (4) counts of failing, over a four-year period, to report, to the Internal Revenue Service, as income, the amounts which he fraudulently obtained from his employer.  The result of this failure to report fraudulently obtained proceeds resulted in Doxie failing to pay over $300,000 in federal income tax.  The question here is whether the mail and wire fraud and tax counts are required to be grouped under the Sentencing Guidelines.  If the counts are not grouped, Doxie's adjusted offense level is increased by one level.

## II.   DISCUSSION

### A.   Applicable Guideline Provision

United States Sentencing Guideline Section 3D1.2 provides:

> All counts involving substantially the same harm shall be grouped together into a single Group.  Counts involve substantially the same harm within the meaning of this rule:
>
> > (a)  When the counts involve the same victim . . . .
> >
> > (b)  When counts involve the same victim and two or more  transactions. . . .
> >
> > (c)  When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
> >
> > (d)  When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm. . . .

2

U.S.S.G. § 3D1.2 (a-d).  The Guideline grouping rules serve particular purposes:

> The Commission, like several state sentencing commissions, has found it particularly difficult to develop guidelines for sentencing defendants convicted of multiple violations of law, each of which makes up a separate count in an indictment. The difficulty is that when a defendant engages in conduct that causes several harms, each additional harm, even if it increases the extent to which punishment is warranted, does not necessarily warrant a proportionate increase in punishment.  []
> Several individual guidelines provide special instructions for increasing punishment when the conduct that is the subject of that count involves multiple occurrences or has caused several harms.  The guidelines also provide general rules for aggravating punishment in light of multiple harms charged separately in separate counts.  These rules may produce occasional anomalies, but normally they will permit an appropriate degree of aggravation of punishment for multiple offenses that are the subjects of separate counts.
> These rules are set out in Chapter Three, Part D (Multiple Counts).  They essentially provide: (1) when the conduct involves fungible items (e.g., separate drug transactions or thefts of money), the amounts are added and the guidelines apply to the total amount; (2) when nonfungible harms are involved, the offense level for the most serious count is increased (according to a diminishing scale) to reflect the existence of other counts of conviction.  The guidelines have been written in order to minimize the possibility that an arbitrary casting of a single transaction into several counts will produce a longer sentence.  In addition, the sentencing court will have adequate power to prevent such a result through departures.

U.S. Sentencing Guidelines Manual ch. 1, pt. A (4)(e), introductory cmt. (2014).

The purpose of the grouping rules is "to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct . . . ."  Id. at Ch. 3, Pt. D.

3

Doxie argues that Doxie's mail and wire fraud should be grouped pursuant to Section 3D.1.3(c) and (d) with the tax counts of which he was found guilty.  The Government contends the counts should not be grouped and thus one level should be added to Doxie's adjusted offense level.

B.    Analysis

1.    Section 3D1.2(c)

Section 3D1.2(c) provides that grouping is appropriate when "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts."  Id.  The Presentence Report ("PSR") considers all of the mail and wire fraud counts as a single group[1] and it is named "Group 1".  The Group 1 base offense level is determined by Section 2B1.1 as 7.  There are nineteen (19) "specific offense characteristics" in Section 2B1.1.  Subsection (b)(1) applies to determine the loss amount for the mail and wire fraud counts and, under it, the base offense level is increased by 16 levels based on the aggregate loss to victim Ennis Paints.[2]  The

---

[1] Section 3D1.2(b) provides for the aggregation of the counts to determine the base offense level.  The parties agree the mail and wire fraud counts should be grouped.

[2] The total intended and actual mail and wire fraud loss to Ennis Paints were calculated as $1,008,417.49 and $1,029,856, respectively.  These loss amounts both fell into the loss range that provided for a 16 offense level increase.

base offense level increase based on the loss amount is applied because the more loss involved—that is the more harm that results—reflects that the crime as committed is more serious and thus calls for a greater punishment recommendation. The other "specific offense characteristics" also generally provide for increases in the base offense level where offense conduct makes the base offense crime more serious. Section 2B1.1 does not have a "specific offense characteristic" based on failure to report on tax returns, income received from fraudulent activity.

The failure to report income counts also are aggregated for guideline purposes. They are named in the PSR as Group 2. The base offense level for Group 2 is provided in Section 2T1.1 of the Guidelines and is determined based on tax loss. Group 2 has two "specific offense characteristics." The first provides for a two level increase if "the defendant failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity . . . ." U.S.S.G. § 2T1.1(b)(1).

The PSR, having calculated the adjusted offense level for the mail and wire fraud Group 1 and the tax count Group 2, determined that the adjusted offense level for the Group 1 fraud offenses was greater than the adjusted offense level for Group 2, and thus the Group 1 adjusted offense level applied in determining the

Guideline recommendations.  The PSR accounts for the Group 2 tax count conduct by adding a one level upward adjustment to the Group 1 adjusted offense level.

Doxie argues that the fraudulent income he received from his mail and wire fraud conduct is what was not reported on his returns, that the two kinds of crime here were related and to punish him for each group would result in double-counting.  Doxie thus argues that grouping of the fraud and tax counts is required under 3D1.2(c).  Section 3D1.2(c), and the purpose of the grouping rules embedded in it, discredit Doxie's argument.

Application Note 5 to Section 3D1.2 provides some guidance to the admittedly obtuse and confusing language of Section 3D1.2(c).  Note 5 provides:

> Subsection (c) provides that when conduct that represents a separate count, e.g., bodily injury or obstruction of justice, is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor.  This provision prevents "double counting" of offense behavior.  Of course, this rule applies only if the offenses are closely related.

U.S.S.G. § 3D1.2(c) cmt. n.5.  Application Note 5 clarifies that Section 3D1.2(c) seeks to avoid the double counting that may result where a governing guideline section has a specific offense characteristic that provides for offense level enhancements based on conduct that supports other counts.  It further provides that

the other count conduct must be closely related. Neither of these factors are present here.

The parties do not dispute that the guideline calculation that governs in this sentencing is the Group 1 calculation for the mail and wire fraud counts. This calculation, done under Section 2B1.1, does not include a specific offense characteristic based on Doxie's criminal conduct in not reporting income derived from his mail and wire fraud criminal conduct. Because the tax crimes are not a specific offense characteristic increase or an adjustment to the Section 2B1.1 general fraud guideline section (that applies to the mail and wire fraud counts), the Group 1 recommendation does not account for Doxie's separate tax crimes or the tax loss harm caused by them. Because Section 2B1.1 does not "embody conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to [] the counts," Section 3D1.2(c) does not require grouping. The tax counts and the conduct underlying them is not an aggravating factor in the mail and wire fraud count guideline calculation. Id. cmt.n.5.[3]

The Court also finds that the mail and wire fraud crimes are not "closely related" to the tax filing offenses. The tax counts and the mail and wire fraud

---

[3] Not grouping advances the multi-count and Section 3D1.2 policy of only grouping counts "involving substantially the same harm." See U.S.S.G. § 3D1.2; Id. at ch. 1, pt. A (4)(e).

counts address separate, independent criminal conduct that resulted in separate, independent harms which are temporally and, in terms of character of conduct, different.  Even if these types of conduct are assumed to be "related" in terms of harm --which they are not -- they do not involve "substantially the same harm." U.S.S.C. 3D1.2(c).

The harm to Ennis in the loss of business funds resulting from Doxie's fraud is different in scope and manner from the harm to the United States by his nonpayment of taxes.  These two harms are separate and distinctly different.  A failure to report income on which tax is owed is a separate offense which carries a separate punishment because it addresses a separate harm—denying the government of taxes owed.  A conviction for failure to report and pay taxes, is not dependent on just failing to report fraudulently obtained amounts such as the counts on which Doxie was convicted here.  It is a separate offense, with a separate harm, which can result even if the unreported income derives from conduct which itself does not constitute criminal activity.  See U.S.S.G. § 2T1.1(b)(1).  Here, Doxie chose to engage in separate crimes for which there was a separate victim and separate harm.  The Guideline anticipates that both of these harms be punished.  Grouping would violate that guideline goal.

The Court, in reaching its decision that grouping is not required, has considered the Fifth Circuit's decision in United States v. Haltom, 113 F.3d 43 (5th Cir. 1997), cited by Doxie.  A careful reading of Haltom showed that it supports the Court's interpretation that there should be no grouping here.  In holding that Section 3D1.2(c) required grouping of fraud and tax counts, the court in Haltom stated generally that "[t]he conduct underlying Haltom's mail fraud conviction was counted twice toward his sentence, once as the basis for his mail fraud offense level and again as a specific offense characteristic of the tax evasion counts."  Id. at 46.  That did not happen here.  Also, unlike here, the application of the fraudulent conduct in Haltom was to enhance the tax evasion guideline calculation which resulted in "double-counting [that] actually lengthened Haltom's sentence . . . ."  Id.  The Court noted again later: "the guidelines clearly forbid the alternative approach taken by the district court: using the mail fraud count to enhance the offense level for tax evasion and then using the enhanced tax evasion offense level to increase the offense level for mail fraud."  Id. at 47.  That is the opposite of what happened here where the fraud offense level was used to determine the sentencing guidelines and the tax counts were not a specific offense characteristic that impacted, at all, the mail and wire fraud guidelines.  In fact, to apply Haltom as Doxie urges, would allow him to avoid any punishment for his tax counts.  This

would result in him avoiding any accountability for his tax crimes because the tax counts would not be considered in the recommended guideline sentence. He would thus avoid any consequence for the completely separate harm he caused to the Government.[4]

2. Section 3D1.2(d)

Section 3D1.2(d) provides for the grouping of closely related counts involving substantively the same harm "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantify of a substance involved, or some other measure of aggregate harm . . . ." U.S.S.G. § 3D1.2(d). Application note 6 explains: "[c]ounts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection. [T]he 'same general type' of offense is construed broadly." Id. at cmt. n.6.

Defendant argues that the mail and wire fraud counts and tax counts here are of "the same general type" because they both resulted in financial gains to Doxie,

---

[4] The Court notes that other courts also have declined to find Halstom persuasive in similar cases. See, e.g., United States v. Martin, 363 F.3d 25, 42, n.31 (1st Cir. 2004); United States v. Vitale, 159 F.3d 810, 815 (3d. Cir. 1998).

10

even if they involved different harm to different entities. To support his argument, Doxie relies on the Second Circuit opinion in United States v. Gordon, 291 F.3d 181 (2d. 2002) and the district court decision in United States v. Lamonda, No. 6:05-cr-131-Orl-28UAM, 2008 WL 68744 (M.D. Fla. Jan. 2, 2008), which followed Gordon. These authorities do not require grouping here. See Section 3D1.2(d). The Second Circuit in Gordon considered the district court's grouping of fraud and tax evasion counts under Section 3D1.2(c) and found that grouping of fraud and tax evasion counts under this subsection was erroneous. The Government conceded that Section 3D1.2(c) grouping was inappropriate.[5] The appeals court, however, remanded for sentencing under Section 3D1.2(d). In doing so, the court supported that grouping under Section 3D1.2(d) should have been considered because, following subsection 3D1.2(a-c), "[s]ection 3D1.2(d) then refers to the introductory commentary's first offense type, that for which an aggregation of harm is facilitated by incremental punishment based on quantity." Gordon, 291 F.3d at 192. The Second Circuit noted that: "Section 3D1.3(b), recognizing the distinct structure of the punishment for § 3D1.2(d) offenses, creates a unique mechanism for these crimes by using the aggregate amount of

---

[5] The Court notes the decision in Gordon supports the Court interpretation that grouping of the wire and mail fraud and tax counts in this case is not required or appropriate under 3D1.2(c).

money or drugs involved in the offenses to set the offense level for the grouped counts." Id. at 193.  This comment acknowledges that the guideline categories of Section 3D1.2(d) are those that have a common aggregate loss amount process and, if they do, grouping occurs.  That is not the case here.

The determination of the loss amount for guideline purposes, under Section 2B1.1, is materially different than the loss evaluation under 2T1.1 (which determines the base offense level based on tax loss only and does not include fraud losses).  Because the loss amount structures and tables apply to different guideline components (one the offense level, the other a specific offense characteristic), there is no "aggregate amount of money involved in the offense to set the offense level for his grouped counts." Id.  Section 3D1.2(d) thus does not require grouping in this case.

### III. CONCLUSION

For the reasons stated above, the Court concludes that the mail and wire fraud counts and the tax failure to report income counts are not grouped and an offense level increase of one level is required to be applied. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Objection to the Presentence Report on the grounds that the counts were not grouped is **OVERRULED**, and the Court will apply the one-level offense level increase when it makes its guideline findings at the continuation of Defendant's sentencing hearing.

**SO ORDERED** this 25th day of February, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE